Certified Mail No. 7006 2760 0004 6934 8301

## THIS IS A VALUABLE DOCUMENT

### Statement of Assignment of Account

Know All Men By These Presents, Evaristus B. Mackey of P.O.Box 2000, Bruceton Mills, West Virginia 26525, party of the first part (Assignor), is the Secured Party of record named in the enclosed financing statement identified by File No. 36-775672, which statement was filed with the Office of the Recorder of Mortgages, State of Louisiana on July 19, 2004.

That the party of the first part under the doctrine of necessity, in consideration of the sum up to the limited amount of the enclosed Claim of $300.00 Case # _00-316_ is assigning an interest in his UCC Contract US Treasury Account Number |:031000040|:2031||• 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 as tender of payment thereof; on May 31, 2007, I assign and transfer to original debtor for payment to party of the second part (Assignee) U.S. DISTRICT COURT, EASTERN DIST. OF LA. _Martin L. C. Feldman_____ at or before the ensealing and delivering of these presents, set over unto the said party of the second part and in accordance with the Terms of the Indemnity Clause contained within the enclosed Commercial Security Agreement and executed by Secured Party, together with the claim or obligation described in said Claim and the money due and to become due thereon, with interest accrued and owing thereon upon demand in accord with H.J.R. 192 and United States Code Title 31, Section 5118 and 5119 at par.

To Have and To Hold the same unto the said party of the second part, it successors and assigns forever or until payment, the said party of the first part has caused these presents to be signed in his/her name without recourse.

This statement is executed and filed pursuant to Louisiana Revised Statute, Title 10, Commercial Law UCC 9-514 thru 9-519. **This Valuable Document is money pursuant to U.C.C. § 1-201 (24).**

Dated: _June 12, 2007_

Signature _____

On this _12th_ day of _June_____, A.D., Two Thousand Seven, before me, a Notary Public of the above state, came a man/woman personally known by me (or who proved to me on the basis of satisfactory evidence) to be the man/woman whose signature is subscribed hereon. The said man/woman solemnly swore under oath that he/she has first hand knowledge of the facts contained herein and that they are true, correct and complete to the best of his/her knowledge, understanding and belief.

Sign _____

**Notary Public**

(SEAL)

Name _Diego M. Moreno, Notary Public_
Address _P.O. Box 450_
City _Bruceton Mills_ State _WV_ Zip _26525_

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DIEGO M. MORENO
United States Penitentiary Hazelton
P.O. Box 450
Bruceton Mills, West Virginia 26525
My Commission Expires Dec. 30, 2015

**Endorsement of Assignee:**    Signature _____
                                 Date _____
**Deposit to:**    Name of Assignee's Bank _____
**For Credit to:**    Assignee's Bank Account Number _____

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 SEP -6 PM 3:29

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA
vs. EVARISTUS B. MACKEY, JR.    434-154-181    (SOC. SEC. NO.)    (CASE NO./SEC.)

JUDGMENT AND PROBATION/COMMITMENT ORDER

In the presence of the attorney for the government,    Month    Day    Year
the defendant appeared in person on this date --------( SEPTEMBER 5, 2001 )

____ WITHOUT COUNSEL    However the court advised defendant of right to counsel and asked
whether defendant desired to have counsel appointed by the court
and the defendant thereupon waived assistance of counsel.

X WITH COUNSEL    ROMA KENT AND GARY SCHWABE, FPD
(Name of Counsel)

Court Reporter's Name: Toni Tusa

PLEA:  _ GUILTY, and the court being satisfied    NOLO CONTENDERE X NOT GUILTY
that there is a factual basis for the plea.

NOT GUILTY, Defendant is discharged.
There being a verdict of    X GUILTY on June 5, 2001

The defendant has been convicted as charged of the offense(s) of 18 USC 922(g)(1) & 924(e)
Felon in Possession of a firearm as charged in Counts 1,2 &3 of the 3rd
superseding indictment

The sentence is imposed pursuant to the Sentencing Reform Act of 1984.  The court adjudged
the defendant guilty as charged and convicted and ordered that:  The defendant is hereby
committed to the custody of the Bureau of ___ to be imprisoned for a term of 327 months
as to Counts 1,2 and 3 to be served c___ly upon release from imprisonment, the
defendant shall be placed on supervised ___ term of five years on Counts 1,2 and 3,
to run concurrently.  Within 72 hours of ___ custody of the Bureau of Prisons, the
defendant shall report in person to th___ ___fice in the district to which the
defendant is released.  While on supervise___ the defendant shall comply with the
standard general conditions that have been ___ by this court. The defendant shall not
possess a firearm.  In addition, the following ___cial conditions are imposed: The defendant
shall participate in a program of testing and/or treatment for drug abuse, as directed by the
probation officer, until such time as the defendant is released from the program by the
probation officer.  The defendant shall contribute to the cost of such treatment to the extent
that the defendant is deemed capable by the probation officer. The defendant shall participate
in the orientation and life skills program as directed by the probation officer. The Court has
determined that the defendant does not have the ability to pay a fine and the fine is waived.
The defendant is remanded to custody.  Government's motion to dismiss the underlying
indictments is granted.

IT IS FURTHER ORDERED that the defendant shall pay to the United States a special assessment
of $100.00 as to Count(s) 1,2,3 , for a total assessment of $300.00
IT IS FURTHER ORDERED that the defendant notify the United States Attorney for this District
within 30 days of any change of residence or mailing address until all fines, restitution,
costs and special assessments imposed by this Judgment are fully paid.  In addition to the
special conditions of probation imposed above, IT IS HEREBY ORDERED that the general
conditions of probation/supervised release set out on the reverse side be imposed.

IT IS FURTHER ORDERED:
[ ] The defendant shall pay any fines that remain unpaid at the commencement of the term
of supervised release.
[ ] The court has determined that the defendant does not have the ability to pay interest.
The interest requirement is (waived) (modified as follows):

SIGNED BY:    CERTIFIED AS A TRUE COPY
XXX U.S. District Judge    ON THIS DATE _____
___ U.S. Magistrate

(Date) September 5, 2001    BY: _____
Deputy Clerk

DATE OF ENTRY
SEP 10 2001    00000011

Fee
Process
X Bktd
CtRmDep
Doc.No.

7006 2760 0004 6934 8301

## Brief in Support

The purpose of showing the assignment of record is to give notice that any inquiries relating to the transaction should be made to the assignee. (**Alabama.** Opinion of the Attorney General, 1967 Ala 4 UCCRS 132).

Partial assignments, or special assignments for a particular creditor **U.S. Iowa 1982.** Code Iowa. § 2115, providing that no general assignment for the benefit of creditors shall be valid unless made for the benefit of all creditors in proportion to their respective claims, does not prevent partial assignments with preferences, or sales or mortgages of any or all of the Debtor's property in payment or security for indebtedness. (South Branch Lumber Co. v. Ott, 12 S.Ct. 318, 142 U.S. 622 35 L.Ed. 1136).

In general **U.S. Dist. Col. 1842.** An assignment by a Debtor under the insolvent laws of Pennsylvania passes to the assignee a claim of the Debtor on the United States for extra services as a public officer, where such claim is presented, before the assignment in a memorial to Congress, although not granted by an act until after the Debtor has received his discharge under those laws; and the Assignee, and not the Debtor, will be entitled to receive the amount from the government. (Miller v. Metz, 41 U.S. 221, 16 Pet. 221, 10 L.Ed. 943).

Also **U.S. Wis 1869.** A valid deed of assignment, for the benefit of creditors, generally places the property so assigned beyond the touch of the ordinary process of attachment or execution directed against the property of the assignor. (McGoon v. Scales, 76 U.S. 23, 9 Wall. 23, 19 L.Ed. 545).

**U.S. Iowa 1884.** The assignment of a claim for current expenses of a railroad company in the hands of a receiver carries with it the right to claim payment out of the fund on which it is a charge. (Burnham v. Bowen, 4 S.Ct. 675, 111 U.S. 776, 28 L.Ed. 596).

**U.S. N.Y. 1919.** Assignment to a certain amount by the obligee in a bond of the principal's obligation thereon carries with it the obligation of the surety given to secure the faithful performance of the duty required of the principal. (Brainerd, Shaler & Hall Quarry Co. v. Brice, 39 S.Ct., 458, 250 U.S. 229, 63 L.Ed. 951).

Also **U.S. Dist. Col. 1878.** If the thing be assigned, the right to collect the proceeds adheres to it, and travels with it whithersoever the property goes. They are inseparable. (Phelps v. McDonald, 99 U.S. 298, 25 L.Ed. 473).

Nature and Extent of Rights of the Assignee in general. **U.S. Ky. 1830.** Where an act of Congress authorized the assignment to the United States of all of a party's rights to money mentioned in a certain receipt when the assignment was made, the legal right was vested in the government, and a charge against the party who had executed the receipt on the books of the Treasury was authorized. (U.S. v. Buford, 28 U.S. 12, 3 Pet. 12, 7 L.Ed. 585).

Also in an action by the United States to recover $10,000 (Ten Thousand) allegedly received by defendant to the use of the United States, where declaration was special on a Treasury Account, and account was raised on the Assignment of a receipt, the claim of the United States could not be considered as existing prior to the Assignment. (U.S. v. Buford, 28 U.S. 12, 3 Pet. 12, 7 L.Ed. 585).

Including, **U.S. Dist. Col. 1854.** Generally, a purchaser of a chose in action or of an equitable title must abide by case of person from whom he buys, and is entitled to that person's remedy, but

*in some instances, a purchaser, by substaining character of a bona fide Assignee, will be in a better situation than the seller. (Judson v. Corcoran, 58 U.S. 612, 17 How. 612, 15 L.Ed. 231).*

*As affected by Notice of Assignment.* **Pa.** *1776. The Assignee of a chose in action not negotiable takes it subject to all the equities which existed between the Assignor and the Maker thereof at the time of the Assignment, and all such equities as may attach in favor of the Maker, before notice of such Assignment by the Assignee to the Maker. (Wheeler v. Hughes, 1 U.S. 23, 1 Dall. 23, 1 L.Ed. 20).*

*So the overall effect of filing a separate Assignment is that after the filing of a statement or a copy of the Assignment, the Assignee is now the Secured Party of record. (UCC § 9-405 {3} See also § 9-405:1). Also filing a Notice of Assignment does not in itself terminate any rights that the Assignor may have in the assigned Security Interest. (Minnesota. Van Diest Supply Co. v. Adrian State Bank {1981 Minn} 305 NW2d 342, 31 UCCRS 420). And if a financing statement shows the Assignment of the Security Interest, the Secured Creditor-Assignor has no standing to bring an action for the conversion of the Collateral. (Illinois. Art Signs, Inc. v. Schaumburg State Bank 1987 1st Dist. 162 IllApp 3d 955.516 NE2d 341.5 UCCRS2d). Which also can be an Assignment without Recourse, once a transfer is made by a dealer to a bank without recourse is Significant in showing that the transfer Assigned the Rights of the dealer in the Contract. (Arizona. Empire Machinery Co. v. Union Rock & Materials Corp. {1978 App} 119 Ariz 145, 579 P2d 1115, 24 UCCRS 232).*

*The Purpose and Effects section of this Brief in Support were taken from Secured Transactions, Section 9-405.*

*Assignment of Account is the transfer to the Assignee giving him a right to have moneys when collected applied to payment of his debt. (Nanny v. H. E. Pogue Distillery Co., 56 Cal.App.2d 817, 133 P.2d 686, 688. Also Black's Law Dictionary).*

*Without Recourse, this phrase, used in making a qualified indorsement of a negotiable instrument, signifies that the indorser means to save himself from liability to subsequent holders, and is a notification that, if payment is refused by the parties primarily liable, recourse cannot be had to him. (Thompson v. First State Bank, 102 Ga. 696, 29 S. E. 610; Binswanger v. Hewitt, 79 Misc. 425, 140 N. Y. S. 143, 145. Also Black's Law Dictionary).*

*Payment or satisfaction, the liability of any party is discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party seeking the discharge or enjoins payment or satisfaction. As according to U.C.C. § 3-603.*

*Tender of payment, any party making tender of full payment to holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney's fees. As according to U.C.C. § 3-604.*

'1006 2760 0004 6934 8301

**LETTER OF ADVICE**

_Martin L.C. Feldman_
Name
_U.S. Dist. Court_
Street Address
_N.O., La, 70130_
City, State and Zip

To Whom It May Concern:

Dear Sir/Madam:

This is a letter of advice to inform you that a transaction from the assignor's UCC Contract Treasury Account has taken place.

All documentation shall be satisfactory to the U.S. Secretary of Transportation in form and substance, as sole trustee or receiver in proceedings related to Bankruptcy, Equity, or Admiralty and in accord with the U.S. Code, Title 46, Section 1247.

(A) Found and determined that the Ens Legis Debtor name in the enclosed Commercial Security Agreement is a citizen of the United States within the meaning of Section 2 of the Shipping Act 1916 as amended.

(B) Found and determined that the Ens Legis Debtor named in the enclosed Commercial Security Agreement is a documented vessel of the United States for the purpose of Foreign trade, Coasting trade or Home traffic due to the registered and recorded Certificate of Birth. Found and determined that the vessel is a preferred mortgage, that includes the whole and has as the mortgagee: a state, the United States government, a federally insured depository institution, an individual who is a citizen of the United States, a person qualifying as a citizen of the United States under Section 2 of the Shipping Act, 1916 (46 App. U.S.C. 802) or a person approved by the Secretary of Transportation.

(C) Found and determined that the Secured Party named in the enclosed Commercial Security Agreement, as beneficiary is a person qualifying as a citizen of the United States as defined in Section 2 of the 1916 Act (46 App. U.S.C. 802).

(D) Found and determined that the vessel will be held in trusts established as a Commercial Business Entity (Ens Legis) conducting business within the United States from Puerto Rico, Guam or the Virgin Islands under an assigned Entity Account Number as shown in the attached Commercial Security Agreement.

(E) Found and determined that the United States guarantees the obligations of the Secured Party named herein on the attached Commercial Security Agreement under cover of a separate Security Agreement in the form of a Commitment To Guarantee Obligations by the United States of America and executed by the Secretary of Transportation for the United States.

1

2006 2000 0004 6934 8300

(F)  Required that the debtor shall not merge or consolidate with any other Entity or sell, lease, transfer, or otherwise dispose of all, or substantially all, of its assets to any person or entity without the prior consent of the Secured Party name Herein on the attached Commercial Security Agreement.

(G)  The Secured Party named herein on the attached Commercial Security Agreement is authorized by law to make any and all transfers.

Please indicate your acceptance of the foregoing actions by signing and returning the enclosed copy of this letter, noting the date of signing thereon.

Sincerely,


Name

Accepted by: _____
For _____
Date _____

Next

Sec. 411. - Issuance to reserve banks; nature of obligation; redemption

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank

7006 2760 0004 6934 8301

EXHIBIT 2



### 3(27)(68)1.4 *(1-1-90)*
### Authority for Other Documents

LEM 3(27)(68)0 provides the authority for two other documents, the contents of which are extracted from this manual. They are (1) Document 6209—ADP and IDRS Information, and (2) Document 5576—Vest Pocket Edition ADP Transaction Codes. Only Document 6209 is for Official Use Only.

### 3(27)(68)2 *(1-1-90)*
### Entity Codes

### 3(27)(68)2.1 *(1-1-90)*
### General

The Entity Codes identify the taxpayer as to account number, filing requirements, location, etc., and are recorded in the Entity Section of a taxpayer's account on the Master File.

### 3(27)(68)2.2 *(1-1-90)*
### Entity Account Number

(1) Each taxpayer account is maintained on the BMF, IMF, IRAF, or EPMF in Entity Account Number sequence. All returns and transactions processed must contain the taxpayer's correct account number. The Entity Account Number (EAN) or Taxpayer Identification Number (TIN) are also referred to as Employer Identification Number (EIN) or Social Security Number (SSN).

(2) BMF Entity Account Number—a nine-digit number assigned by the Internal Revenue Service Centers (SC) to taxpayers who must file business returns, officially entitled Employers' Identification Number. The printed format is: xx-xxxxxxx. Form 706 and 709 accounts will be in Social Security Number (SSN) sequence.

(3) IMF and IRAF Entity Account Number—The nine-digit Social Security Number assigned by the Social Security Administration to all individuals required to file individual returns. The printed format is: xxx-xx-xxxx.

(4) EPMF Accounts—Accounts are maintained in Employer Identification Number sequence.

(5) Temporary IMF or IRAF Social Security Number—a nine-digit temporary number assigned by the Service Center: (9xx)-(xx)-(xxxx).

    (a) 900 through 999—indicates number is a temporary SSN.
    (b) The code of the service center assigning the number.
    (c) Numbers assigned consecutively beginning with 0001.
    (d) The printed format of a Temporary IMF or IRAF Entity Account Number is Txxxxxxxxx.

(6) IMF and IRAF: For printing on other than taxpayer notices and transcripts, a tenth digit (either zero or one and referred to as the SSN Validity Digit) is shown to the right of the 9-digit SSN. An asterisk (*) appears next to the SSN on taxpayers notices and transcripts to indicate the SSN is invalid for the particular taxpayer.



| SSN Validity Digit | Explanation |
| --- | --- |
| 0 | The SSN is valid for the taxpayer using it. |
| 1 | The SSN is not valid for the taxpayer using it. |

Contract No. MA-_____

# COMMITMENT TO GUARANTEE OBLIGATIONS

by

## THE UNITED STATES OF AMERICA

Accepted by

Shipowner

THIS COMMITMENT TO GUARANTEE OBLIGATIONS, dated _____ (the "Guarantee Commitment"), made and entered into by the UNITED STATES OF AMERICA (the "United States"), represented by the SECRETARY OF TRANSPORTATION, acting by and through the MARITIME ADMINISTRATOR (the "Secretary"), and accepted on said date by _____, a _____ (the "Shipowner").

## RECITALS:

A.     The Shipowner is the sole owner of the _____ and _____, Vessels built pursuant to the Construction Contract with _____ (the "Shipyard").

B.     To aid in financing the Construction of the Vessels, the Shipowner will borrow an aggregate principal amount equal to, ___% of the Depreciated Actual Cost or Actual Cost of the Vessels, as the case may be, as of the Closing Date. To accomplish such financing, the Shipowner has accepted this Guarantee Commitment subject to the terms and conditions set forth herein.

C.     The Shipowner has entered into the Bond Purchase Agreement providing for the sale and delivery, on the Closing Date, of obligations in the aggregate principal amount of $_____ to be designated "United States Government Guaranteed Ship Financing Obligations, Series" (the "Obligations") having the maturity date and interest rate set forth herein.

D.     As security for the Guarantees and the Secretary's Note, the Shipowner will execute and deliver the Security Agreement, Contract No. MA-____ , and the following agreements shall be executed and delivered: the Indenture, the Authorization Agreement, Contract No. MA-___, the Secretary's Note, the Mortgage, Contract No. MA-___, the Financial Agreement, Contract MA-____, and the Depository Agreement, Contract No. MA-____.

1

7006 2160 0004 6754 8301

Document 1

# COMMITMENT TO GUARANTEE OBLIGATIONS

by

## THE UNITED STATES OF AMERICA

Accepted by

Shipowner

(Under Title XI, Merchant Marine Act, 1936,
as amended, and in effect on the
date of this Guarantee Commitment)

## TABLE OF CONTENTS

| Doc. No. | Document |
|---|---|
| 1 | Commitment to Guarantee Obligations |
| 2 | Schedule One ~ Form of Opinion of Counsel |
| 3 | Appendix I ~ Form of Bond Purchase Agreement |
| 4 | Appendix II ~ Form of Trust Indenture |
| 5 | Schedule A ~ Schedule of Definitions to Trust Indenture |
| 6 | Exhibit 1 ~ General Provisions Incorporated into the Trust Indenture by Reference |
| 7 | Exhibit 2 ~ Forms of Obligation, Guarantee and Trustee's Authentication Certificate |
| 8 | Exhibit 3 ~ Form of Authorization Agreement |
| 9 | Appendix III ~ Form of Security Agreement |
| 10 | Exhibit 1 ~ General Provisions Incorporated into the Security Agreement by Reference |
| 11 | Schedule X ~ Schedule of Definitions |
| 12 | Exhibit 2 ~ Form of Secretary's Note |
| 13 | Exhibit 3 ~ Form of First Preferred Fleet Mortgage |
| 14 | Exhibit 4 ~ Form of Title XI Reserve Fund and Financial Agreement |
| 15 | Exhibit 5 ~ Form of Consents of Shipyards |
| 16 | Exhibit 6 ~ Construction Contracts |
| 17 | Exhibit 7 ~ Form of Depository Agreement |

2

*DEBT TRANSFERED BY ASSIGNMENT*

7006 3760 0004 6934 8301

of loss, and insurance in excess of insurable value as stated in its policies, but none of these claims are available under its answer, nor have they been litigated by consent. The answer does not mention any of these things. It contains an allegation that, at the time of the fire (presumably windstorm), it had no insurance upon plaintiff's property and that its purported policies were void. This allegation is a conclusion of law and cannot, because of failure to state the facts, be construed as a pleading supporting the assertions now made.

The order of the trial court is reversed, with directions to enter judgment against the American Insurance Company for $571.86, and against the North Star Farmers' Mutual Insurance Company for $764.74.

Reversed.

*Exhibit 4*

### STANEK v. WHITE. (No. 26178.)

Supreme Court of Minnesota.    Oct. 14, 1927.

*(Syllabus by the Court.)*

1. **Bankruptcy** &#8676;434—**Moral obligation to pay debt, represented by note from which debtor was released in bankruptcy, held sufficient consideration for new note.**

In an action on a promissory note given for a note from which debtor had been released by a discharge in bankruptcy, *held:*

That the moral obligation to pay the original debt is a sufficient consideration to support the new promise to pay.

2. **Bankruptcy** &#8676;434—**After discharge, debt was assignable, as respects consideration for new promise.**

After a discharge, the original debt has sufficient vitality to be assignable.

3. **Bankruptcy** &#8676;436(3)—**Possession of original note, as to which maker was discharged in bankruptcy and which he received on making new note, held to make prima facie showing of ownership.**

Plaintiff's possession of the original note made a prima facie case of ownership.

Appeal from Municipal Court of Minneapolis; O. L. Smith, Judge.

Action by William R. Stanek, as administrator of the estate of Clara Koller Stanek, deceased, against M. W. White. From a judgment for plaintiff, defendant appeals. Affirmed.

Lewis Severance, of Minneapolis, for appellant.

Allen & Fletcher and Thomas Vennum, all of Minneapolis, for respondent.

WILSON, C. J. [1] Appeal from judgment. Victor Stanek held a promissory note of defendant, who procured a discharge in bankruptcy. Thereafter defendant gave a note for $402.50 to Clara Stanek, the mother of Victor Stanek, who surrendered to him the original note. The administrator of the estate of Clara Stanek, now deceased, seeks to recover judgment upon the new note. The answer alleges want of consideration for the new note.

The original debt was not paid. The discharge in bankruptcy operated as a bar to its enforcement. The debt could be revived by a new promise, which, in Minnesota, must be in writing. G. S. 1923, § 8456, subd. 4. The moral obligation involved in the original debt affords a sufficient consideration to support a new promise to pay the debt. Dunnell's Digest, § 748; Collier on Bankruptcy, vol. 1, p. 642; Gilbert's Collier on Bankruptcy (1927) 413. Liability rests upon new promise to pay, not upon the original note. The discharge took the enforceability from the original note which still evidenced the moral obligation, and the new note revived the legal obligation.

[2] There is a distinction between a debt discharged and one paid. When discharged, the debt still exists, though divested of its character as a legal obligation during the operation of the discharge. Something of the original vitality of the debt continues to exist, which may be transferred even though the transferee takes it subject to the disability incident to the discharge. The fact that it carries something which may be a consideration for a new promise to pay, so as to make an otherwise worthless promise a legal obligation, makes it the subject of transfer by assignment. Badger v. Gilmore, 33 N. H. 361, 66 Am. Dec. 729. Indeed, there is no reason why a transferee of such note should not have the benefit of having the debt advanced to a condition of legal liability.

[3] The method of transfer from the original payee to the mother is not important. The transfer was made after the discharge and before the new note was given. Plaintiff does not claim any rights superior to the original holder. Possession of the original note made a prima facie showing of ownership. Defendant received the same from her hands, and does not plead any lack of authority in the mother to surrender the old note for the new.

Affirmed.

### LEWIS v. SMALL.

Supreme Court of Minnes...

*(Syllabus by the...*

1. **Bills and notes** &#8676;422(...) by makers and indorsers... payment, notice of nonpay... in absence of contrary res... indorsers (Gen. St. 1923,...

The waiver in a promi... ers and indorsers, of presen... notice of nonpayment, and ... sence of restrictions to th... of the contract of indorseme... liable accordingly.

2. **Bills and notes** &#8676;516—... dorsement of note was u... support judgment against...

There being unequivoc... port of the judgment, it must...

Appeal from District Cou... ty; Karl Finkenburg, Judg...

Action by Ben H. Lew... Small. From a judgment... fendant appeals. Affirme...

Thos. Fraser, of Roches... cer, of St. Charles, for app... O. E. Hammer, of Roc... J. Owen, of Winona, for r...

STONE, J. Action by t... an alleged guarantor on... After a verdict for plain... peals from the judgment.... tion bore date of March ... $1,200, and ran to Hilmer...

By appropriate indorse... ferred his "undivided on... Fugle. Following that ... appears the following:

"Pay to the order of W.... guaranteed.

[1] 1. Plaintiff's theory ... fendant signed his name ... preceding indorser, Fugl... express guaranty of the ... trial judge observes not c... ings were framed and t... that theory, but also ... throughout the trial, acqu... may be immaterial, there... itself contained an uncoi... makers, indorsers, and gu... ment for payment, notice ... protest. That was plaint... tract, including that of ... was binding upon indorse... tect themselves by rest... Bryant v. Lord, 19 Mi... Bryant v. Merchants' Ba... Ky. (8 Busb) 43; Sohn ...

&#8676;For other cases see s...

&#8676;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

7006 2760 0004 6934 8301

State of Louisiana
Uniform Commercial Code – Financing Statement
UCC–1

Important – Read instructions before filling out form.

I, the undersigned certify that this is a
true copy of _UCC-1_
Instrument No. _36-775672_
Recorded in Book _____ folio _____

_D. J. Butler_
Recorder of Mortgages
State of Louisiana
Parish of Orleans

OR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names
ORGANIZATION'S NAME

| INDIVIDUAL'S LAST NAME (AND TITLE OF LINEAGE (e.g. Jr., Sr., III), if applicable) | FIRST NAME | MIDDLE NAME |
|---|---|---|
| MACKEY, JR. | EVARISTUS | BENNIE |

ING ADDRESS: P.O. Box 1000   CITY Lewisburg   STATE PA   POSTAL CODE 17837   COUNTRY U.S.A.

| ID 2. SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR: | 1e. TYPE of ORGANIZATION Business | 1f. JURISDICTION OF ORGANIZATION Puerto Rico | 1g. ORGANIZATIONAL ID #, if any 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 | ☐ None |

IONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names
ORGANIZATION'S NAME

| INDIVIDUAL'S LAST NAME (AND TITLE OF LINEAGE (e.g. Jr., Sr., III), if applicable) | FIRST NAME | MIDDLE NAME |
|---|---|---|
| | | |

ING ADDRESS   CITY   STATE   POSTAL CODE   COUNTRY

| ID #. SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR: | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ None |

RED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)
ORGANIZATION'S NAME

| INDIVIDUAL'S LAST NAME (AND TITLE OF LINEAGE (e.g. Jr., Sr., III), if applicable) | FIRST NAME | MIDDLE NAME |
|---|---|---|
| MACKEY, JR. | EVARISTUS | BENNIE |

ING ADDRESS: P.O. Box 1000   CITY Lewisburg   STATE PA   POSTAL CODE 17837   COUNTRY U.S. N. Am

ANCING STATEMENT covers the following collateral:

INSTR. No. 36-775672

MORTGAGE OFFICE
PARISH OF ORLEANS

(vertical right margin, partly illegible) ... 04 JUL 19 P 2:41 ... MORTGAGE OFFICE ... PARISH OF ORLEANS

al applicable and attach legal description of real property:   ☐ Fixture filing   ☐ As-extracted collateral   ☐ Standing timber
ting goods:   ☐ This debtor(s) do not have an interest of record in the real property (Enter name of an owner of record in 5b).
of real property (if other than named debtor)

nly if applicable and check only one box.
or is a Transmitting Utility. Filing is Effective Until Terminated.
in connection with a public finance transaction. Filing is
tive for 30 Years.
only if applicable and check only one box.
is a ☑ Trust or ☐ Trustee acting with respect to property held
☐ Decedent's Estate

IVE DESIGNATION (if applicable):   ☐ LESSEE/LESSOR
IGNEE/CONSIGNOR   ☐ BAILEE/BAILOR
R/BUYER   ☐ AG. LIEN   ☐ NON-UCC FILING
hone Number to contact filer

10. The below space is for Filing Office Use Only

PA #: 04-   INST. #: 775672   UCC #: 36775672   BOOK: _____   PAGE: _____
TYPE: UCC OPEN   AMT: $205.00   DT: 7/19/2004 3:10:30 PM
Mortgage Office  Desiree M. Charbonnet, Recorder of Mortgages

owledgment To: (Name & Address)

United States Penitentiary
P.O. Box 1000
Lewisburg PA 17837
Evaristus Mackey)

11. ☐ CHECK TO REQUEST SEARCH REPORT(S) ON DEBTOR(S)
(ADDITIONAL FEE REQUIRED)   ☐ ALL DEBTORS   ☐ DEBTOR 1   ☐ DEBTOR 2

NEW FORM UCC-1 SECRETARY OF STATE W. FOX McKEITHEN (REV. 7-2001)

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

| 9a. ORGANIZATION'S NAME |
| --- |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
| --- | --- | --- |
| MACKEY | EVARISTUS | BENNIE JR. |

10. MISCELLANEOUS: LA-Orleans Parish

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME |
| --- |

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- |
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| | | | | |

| 11d. TAX ID #: SSN OR EIN | ADD'NL INFO RE: ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
| --- | --- | --- | --- | --- |
| | | | | NONE |

12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME |
| --- |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- |
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| | | | | |

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as extracted collateral, or is filed as a ☐ fixture filing.

14. Description of real estate:

16. Additional collateral description:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

17. Check only if applicable and check only one box.
Debtor is a ☑ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☑ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction -- effective 30 years
☐ Filed in connection with a Public-Finance Transaction -- effective 30 years

LexisNexis Document Solutions
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

1006 2160 0004 6434 8301

42

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

PARISH OF ORLEANS

2001 APR 17 P 3 41

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Evaristus Mackey
P.O. Box 2000
Bruceton Mills W. Va. 86525

HR #: 07-   INST. #: 895514   UCC #: 36895514   BOOK:_____   PAGE:_____
TYPE: UCC OPEN   AMT: $42.00   BY: 4/17/2007 3:56:16 PM
Mortgage office   Desiree M. Charbonnet, Recorder of Mortgages

S.A.B.

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE #  36-775672

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 2000 | Bruceton Mills | W.V. | 26525 | USA |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION Corporation | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☑ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

Security Agreement

I, the undersigned certify that this is a true copy of _UCC 3 Amendment_ Instrument No. _36-895514_ as recorded in Book __ folio __

_[signature]_
Recorder of Mortgages
State of Louisiana
Parish of Orleans

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | Mackey | Evaristus | Bennie | |

10. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3)

'7006 2160 0004 6934 8301

SOS-0002

**LOUISIANA SECRETARY OF STATE**
**OFFICE OF UNIFORM COMMERCIAL CODE/CENTRAL REGISTRY**
**CONFIRMATION OF FILING**


EVARITUS MACKEY
P.O. BOX 2000
BRUCETON MILLS, W.VA. 26525


Pursuant to La.R.S.10:9-523(g), this is a confirmation that the following
information has been received and included within the Secretary of State's
master index of Uniform Commercial Code filings. Note that this confirmation
does not constitute a determination of the legal sufficiency of the filing.

Any questions regarding the filing information contained herein should be directed
to the filing officer which accepted and recorded the filing. General UCC
assistance may be obtained by contacting our UCC Division at 1-800-256-3758.


Jay Dardenne
Secretary of State

===============================================================================
ORIGINAL FILE NUMBER 36-775672    FILED  7/19/04  2:49 PM  TRANSMITTING UTILITY
                                  PARISH IN WHICH FILED:  ORLEANS


SUBSEQUENT FILINGS

1.  AMENDMENT        FILE NUMBER 36-895514     FILED  4/17/07  3:41 PM    ORLEANS
                     ADDED COLLATERAL:  SECURITY AGREEMENT

    DEBTOR(S)
      MACKEY, JR.              EVARISTUS      BENNIE        000000000
      P.O. BOX 1000
      LEWISBURG, PA 17837


    SECURED PARTY
      EVARISTUS BENNIE MACKEY, JR.                          000000000
      P.O. BOX 1000
      LEWISBURG, PA 17837

7006 2760 0004 6434 8801

# COMMERCIAL SECURITY AGREEMENT

## NON-NEGOTIABLE — NON-TRANSFERABLE

### FILED FOR RECORD

# 2006-595

Page 1 Of 6

Parties

**DEBTOR**

MACKEY; EVARISTUS, ORGANIZATION, TRADE MARK/TRADE NAME (and all derivatives thereof)
P. O. BOX 2000
Bruceton Mills WV 26525

Social Security # 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

*Secured Party*

Evaristus Mackey (and all derivatives thereof)
C/O 535 Braxton Blvd.
near [23511 ]
Fayetteville, North Carolina

### AGREEMENT

This Security Agreement ("AGREEMENT") is made and entered into on **May 7, 1967** by and between the 'real man' **Evaristus Mackey** (hereinafter known as the Secured Party) and the Juristic Person/Strawman/Dummy Corporation **EVARISTUS MACKEY, ORGANIZATION** (hereinafter known as DEBTOR) Social Security number # 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.

*NOW, THEREFORE*, it is hereby agreed as follows:

In consideration for the Secured Party agreeing to provide certain Collateral and goods, identified hereinbelow, and certain accommodations to the Debtor including, but not limited to, allowing the DEBTOR to act as an agent, utilized for the purpose of transmitting commercial activity for the benefit of the Secured Party to the extent that the context otherwise required, for the purpose of conducting traffic in commercial activity, as a pipeline for the transmission of goods and chattel property and paper; and, as security for payment of all sums due, or to become due or owing by Debtor to Secured Party, Debtor hereby grants to Secured Party for valuable consideration a security interest in the Collateral described hereinbelow and agrees to provide to Secured Party the Indemnification Bond also contained hereinbelow, securing the indebtedness and agrees that the Secured Party shall have the rights stated in this Agreement with respect to the collateral in addition to all other rights which Secured Party may have by law.

The security interest granted herein secures any and all indebtedness and liabilities, whatsoever, owed by Debtor to Secured Party whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising and howsoever evidenced. This security interest is also given to secure any other debts which may be owed by Debtor to Secured Party from time to time as stated herein below.

### COLLATERAL

All Accounts, Contract Rights, Chattel Paper, General Intangibles, Inventory, Equipment and Fixtures; Whether owned now or acquired later; all accessions, additions, replacements, and substitution; all records of any kind relating to any of the foregoing; all proceeds (including insurance, bond, general intangibles and accounts proceeds), together with all the other real and personal property with all and singular the improvements, ways, streets, alleys, driveways, passages, waters, watercourses, rights, liberties, privileges, hereditaments, and appurtenances, whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents issues and profits thereof, and all estate right, title, interest, property, claim and demand whatsoever of the said Debtor, in law, equity, or otherwise however, of, in and to the same and every part thereof including but not limited to the following; Certificate of Birth doc. Orleans County Bureau of Vital Statistics, New Orleans, Louisiana File number: N/A born Evaristus Bennie Mackey Jr. and all documents and/or instruments created using said birth documents; Louisiana Driver's Lic. # 002989117; N/A County and Oklahoma Driver's Lic. # 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; N/A County and all documents and/or instruments created using said license number; Social Security # 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; and all documents and/or instruments created using said Social Security Number and all proceeds thereof; all DEBTOR'S UCC Contract Accounts, U. S. Treasury Accounts and all proceeds

thereof, and all documents and/or instruments created using said Social Security Number, and all proceeds thereof used within said Treasury Accounts, of DEBTOR'S ORGANIZATION, corporations, business trusts and trusts, **Social Security Number: 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 Postal Addresses:** c/o P. O. Box 1000, Marion, Illinois 62859; 535 Braxton Blvd., Fayetteville, North Carolina 23511; P. O. Box 1000, Lewisburg, Pennsylvania 17837.

## INDEMNITY CLAUSE

Know all men by these presents, that I, EVARISTUS MACKEY, (DEBTOR), am held firmly bound unto Evaristus Mackey (Secured Party) in the sum of present Collateral Values and any debts or losses claimed by any and all persons against the Commercial Transactions and Investments of aforesaid Collateral up to the penal sum of Unlimited Amount ($ Unlimited) lawful money of the United States, for the payment of which, well and truly be made, I bind myself, my heirs, executors, administrators and third party assigns, jointly and severally and firmly by these presents

The conditions of the above bond is, that whereas the Collateral described hereinabove and utilized for the purpose of transmitting goods in Commercial Activity by the Debtor are in pursuance of the Statutes in such case made, provided and indentured to the Secured Party by which indenture the said Debtor covenanted to do certain things as stated in this agreement.

The conditions of this obligation are such that if Secured Party suffers any loss of Vested Rights in the said Collateral Property or Monetary Losses due to debts claimed against the aforesaid Collateral Property, or the Debtor, who binds himself by this obligation to make advance payments from Debtor's U. S. Treasury Accounts, established under IMF, BMF, IRAF, EPMF (temporary, permanent and current) accounts to any and all who make debt claims against any of the Collateral or Vested Rights in said Collateral of Secured Party, this obligation shall bind the Debtor in all respects, to fully and faithfully comply with all applicable provisions of law.

This bond shall effect as of the date hereon and shall remain in full force and effect until the surety (Secured Party) is released from liability by the written order of the UNITED STATES Government and provided that the Debtor may cancel this bond at any time and be relieved of further liability hereunder by delivery within thirty (30) days written notice to the Secured Party. Such cancellation shall not effect any liability incurred or accrued by Debtor hereunder prior to the termination of said thirty (30) day period. The Debtor will promptly reissue a bond before the end of the thirty (30) day period for an amount equal to or greater than the value of this instrument unless the parties agree otherwise.

The Debtor (Indemnifying Party), without the benefit of discussion or division, does hereby agree, covenant and undertake to indemnify, defend and hold the Secured Party (Indemnified Party) harmless from and against any and all claims, losses, liabilities, costs, interests and expenses (hereinafter referred to as "claims" or a "claim") including, without restriction, all legal costs, interests, penalties and fines suffered or incurred by the Secured Party arising as a result of the Secured Party having its personal guarantee with respect to any loan or general indebtedness of the Debtor including, without in any way restricting, the generality of the foregoing amount owing by the Debtor to all creditors.

The Indemnified Party (Secured Party/Surety) shall promptly advise the Indemnifying Party (Debtor) of any claim and provide the same with full details thereof, including copies of any document, correspondence, suit or action received by or served upon the Indemnified Party (Secured Party). The Indemnified Party (Secured Party) shall fully cooperate with the Indemnifying Party (Debtor) in any discussion, negotiations or other proceedings relating to any claim.

## OBLIGATIONS OF THE DEBTOR

Debtor warrants and covenants to Secured Party as follows:

**ORGANIZATION.** Debtor is a corporation, business trust or trust which is duly organized, validly existing, and in good standing under the laws of the United States.

**AUTHORIZATION.** The execution, delivery, and performance of this Agreement by Debtors have been duly authorized by all necessary action by an organization, or bylaws, or (a) any agreement or other instrument binding upon Debtor or (b) any law, governmental regulation, court decree, or order applicable to Debtor.

**PERFECTION OF SECURITY INTEREST.** Debtor agrees to execute such financing statements and to take whatever other actions are requested by Secured Party to perfect and continue Secured Party's interest in the Collateral. Upon request of Secured Party, Debtor will deliver to Secured Party any and all of the documents evidencing or constituting the Collateral, and Debtor will note Secured Party's interest upon any and all chattel paper if not delivered to Secured Party for possession by Secured Party. Debtor promptly will notify Secured Party of any change in Debtor's name including any change to the assumed business names of Debtor. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Debtor may not be Indebted to Secured Party.

**ENFORCEABILITY OF COLLATERAL.** To the extent the Collateral consists of accounts, contract rights, chattel paper, or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with applicable laws concerning form, content, and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.

**REMOVAL OF COLLATERAL.** Debtor shall keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts, the records concerning the Collateral) at Debtor's address shown above, or at such locations as are acceptable to Principals. Except

2

7004 2760 0004 6454 8501

in the ordinary course of its business, including sales of inventory, Debtor shall not remove the Collateral from its existing locations without the prior written consent of Secured Party. To the extent that the Collateral consists of vehicles, or other titled property, Debtor shall not take or permit any action which would require registration or sale or disposal, without the prior written consent of Secured Party.

**TRANSACTIONS INVOLVING COLLATERAL.** Except for inventory sold or accounts collected in the ordinary course of Debtor's business, Debtor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Debtor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Secured Party. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Secured Party, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Secured Party and shall not be commingled with any other funds: provided however, this requirement shall not constitute consent by Secured Party to any sale or other disposition. Upon receipt, Debtor shall immediately deliver any such proceeds to Secured Party.

**TITLE.** Debtor represents and warrants to Secured Party that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or which Secured Party has specifically consented. Debtor shall defend Secured Party's rights in the Collateral against the claims and demands of all other persons.

**MAINTENANCE AND INSPECTION OF COLLATERAL.** Debtor shall maintain all tangible Collateral in good condition and repair. Debtor will not commit or permit damage to or destruction of the Collateral or any part of the Collateral. Secured Party and its designated representatives and agents shall have the right at all reasonable times to examine, inspect, and audit the Collateral wherever located. Debtor shall immediately notify Secured Party of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral; of any request for credit or adjustment or of any other dispute arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of the Collateral.

**TAXES, ASSESSMENTS AND LIENS.** Debtor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Debtor may withhold any such payment or may elect to contest any lien if Debtor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Secured Party's interest in the Collateral is not jeopardized in Secured Party's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Debtor shall deposit with Secured Party cash, a sufficient corporate surety bond or other security satisfactory to Secured Party in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Debtor shall defend itself and Debtor shall satisfy any final adverse judgement before enforcement against the Collateral.

**COMPLIANCE WITH GOVERNMENTAL REQUIREMENTS.** Debtor shall comply promptly with all laws, ordinances and regulations of all governmental authorities applicable to the production, disposition, or use of the Collateral. Debtor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Secured Party's interest in the Collateral, in Secured Party's opinion, is not jeopardized.

**DEBTOR'S RIGHT TO POSSESSION.** Until default, Debtor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Debtor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Secured Party is required by law to perfect Secured Party's security interest in such Collateral. If Secured Party at any time has possession of any Collateral, whether before or after an Event of Default, Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral, if Secured Party takes such action for that purpose as Debtor shall request or as Secured Party, in Secured Party's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Debtor shall not of itself be deemed to be a failure to exercise reasonable care. Secured Party shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Collateral.

**EXPENDITURES BY SECURED PARTY.** If Secured Party must discharge or pay any amounts under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral, secured Party also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All expenditures incurred or paid by Secured Party for any purposes will then bear interest at the rate charged under the law.

## SUBORDINATION OF DEBTOR'S DEBTS TO SECURED PARTY

Debtor agrees that the indebtedness of the Debtor to the Secured Party, whether now existing or hereinafter created, shall be prior to any such claim that Third Party may now have or hereafter acquire against Debtor whether or not Debtor becomes insolvent. Debtor hereby expressly subordinates any claim Debtor may have against Secured Party, upon any account whatsoever, to any claim that the Secured Party may now or hereafter have against Debtor. In the event of insolvency and consequent liquidation of the assets of Debtor, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of the Debtor applicable to the payment of the claims of both Secured Party and Debtor shall be paid to Secured Party and shall be first applied by Secured Party to the indebtedness of Debtor to Secured Party. Debtor does hereby assign to Secured Party all claims which it may have or acquire against Debtor or against any assignee or trustee in the bankruptcy of Debtor, provided however, that such assignment shall be effective only for the purpose of assuring to Secured Party full payment in legal tender of the indebtedness. If the Secured Party so requests, any notes or other agreements now or hereafter evidencing any debts or obligations of Debtor to Third Party shall be marked with a legend that the same are subject to this Agreement and shall be delivered to Secured Party. Debtor agrees, and the Secured Party hereby is authorized, in the name of the Debtor, from the time to

execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Secured Party deems necessary or appropriate to perfect, preserve and enforce the rights under this Agreement.

## MISCELLANEOUS PROVISIONS.

The following miscellaneous provisions are a part of this Agreement:

**AMENDMENTS.** This Agreement together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement expressly or orally shall be effective unless expressed in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**APPLICABLE LAW.** This Agreement has been delivered to Secured Party and accepted by Secured Party in the State of Illinois. If there is a lawsuit, Debtor agrees upon Secured Party's request to submit to the jurisdiction of the Illinois State courts in the Judicial District at or nearest Secured Party's address shown above, or at Secured Party's option to the jurisdiction of the courts wherever any Property is located. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

**ATTORNEY'S FEES; EXPENSES.** Debtor agrees to pay upon demand all of Secured Party's costs and expenses, including reasonable attorney's fees and Secured Party's legal expenses, incurred in connection with the enforcement of this Agreement. Secured Party may pay someone else to help enforce this Agreement and Debtor shall pay the costs and expenses of such enforcement. Costs and expenses include Secured Party's reasonable attorney's fees and legal expenses whether or not there is a lawsuit, including reasonable attorney's fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Debtor also shall pay all court costs and such additional fees as may be directed by the court.

**NOTICES.** Except for revocation notices by Debtor, all notices required to be given by either party to the other under this Agreement shall be in writing and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing.

**INTERPRETATION.** In all cases where there is more than one Debtor or the Debtor's principles, the United States Inc. or the State of Illinois is in any way involved, then all words used in this Agreement in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Debtor named in a Claim or when this Agreement is executed on more than one Debtor the words "Debtor" respectively shall mean all and any one or more of them. The words Debtor and Secured Party include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Severability.** Should any portion of this Agreement be judicially determined to be invalid or unenforceable, the remainder of this Agreement shall not be affected by such determination and shall remain in full force and effect. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability, or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Waiver.** Secured Party shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising any right shall operate as a waiver of such right or any other right. A waiver by Secured Party of a provision of this Agreement shall not prejudice or constitute a waiver of Secured Party's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Secured Party, nor any course of dealing between Secured Party and Debtor shall constitute a waiver of any of Secured Party's rights or any of Debtor's obligations as to any future transactions. Whenever the consent of Secured Party is required under this Agreement, the granting of such consent by Secured Party in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Secured Party.

## DEFAULT

The following shall be events of default hereunder: (a) failure by Debtor to pay any debt secured hereby when due; (b) failure by Debtor to perform any obligations secured hereby when the same should be performed.

**EVENT OF DEFAULT.** The words "Event of Default" mean and include any Events of Default set forth below in the section titled "Events of Default."

**DEBTOR.** The word Debtor means and includes without limitation, each and all of the Debtors and their Principals, sureties, and accommodation parties in connection with the indebtedness.

**INDEBTEDNESS.** The word "Indebtedness" means the indebtedness evidenced by this Agreement, including all principal and interest, together with all other indebtedness and costs and expenses for which Debtor is responsible under this Agreement or under any of the related documents. In addition, the word "Indebtedness" includes all other obligations, debts and liabilities, plus interest thereon, of DEBTOR'S ORGANIZATION, or any one or more of them, to Secured Party, as well as all claims by Secured Party against Debtor, or any one or more of them, whether existing now or later, whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated, whether Debtor may be liable individually or jointly with others, whether Debtor may be obligated as Debtor, surety, accommodation party or otherwise;

4

whether recovery upon such indebtedness may be or hereafter may become barred by any statute of limitations; and whether such indebtedness may be or hereafter may become otherwise unenforceable.

**RELATED DOCUMENTS.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, registrations, securities with or without a pledge, trust receipts, field warehousing documents and factor's liens, accounts, U. C. C. contract accounts, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

**EVENTS OF DEFAULT**

Each of the following shall constitute an Event of Default under this Agreement:

1.   **DEFAULT ON INDEBTEDNESS.** Failure of Debtor to make any payment when due on the Indebtedness.

2.   **OTHER DEFAULTS.** Failure of Debtor to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or in any other agreement between Secured Party and Debtor. If any failure, other than a failure to pay money, is curable and if Debtor has not been given prior notice of a breach of the same provision of this Agreement, it may be cured (and no Event of Default will have occurred) if Debtor, after Secured Party sends written notice demanding cure of such failure: (a) cures the failure within fifteen (15) days; or (b), if the cure requires more than fifteen (15) days, immediately initiate steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

3.   **FALSE STATEMENTS.** Any warranty, representation or statement made or furnished to Secured Party by or on behalf of Debtor under this Agreement is false or misleading in any material respect, either now or at the time made or furnished.

4.   **DEFECTIVE COLLATERALIZATION.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

5.   **INSOLVENCY.** The dissolution or termination of Debtor's existence as a going business, the insolvency of Debtor, the appointment of a receiver for any part of Debtor's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Debtor.

6.   **CREDITOR PROCEEDINGS.** Commencement of foreclosure, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Debtor against the Collateral or any other collateral securing the Indebtedness. This includes a garnishment of any of Debtor's deposit accounts with Secured Party. However, this Event of Default shall not apply if there is a good faith dispute by Debtor as to the validity or reasonableness of the claim which is the basis of the creditor proceeding and if Debtor gives Secured Party written notice of the creditor proceeding and deposits with Secured Party monies or a surety bond for the creditor proceeding, in an amount determined by Secured Party, in its sole discretion, as being an adequate reserve or bond for the dispute.

7.   **EVENTS AFFECTING DEBTOR.** Any of the preceding events occurs with respect to any Debtor of any of the Indebtedness or such Debtor dies or becomes incompetent. Secured Party, at its option, may, but shall not be required to, permit the Debtor's estate to assume unconditionally the obligations arising under the Agreement in a manner satisfactory to Secured Party, and, in doing so, cure the Event of Default.

8.   **INSECURITY.** Secured Party, in good faith, deems itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.**

If an Event of Default occurs under this Agreement, at any time thereafter, Secured Party shall have all the rights of a Secured Party under the Uniform Commercial Code. In addition and without limitation, Secured Party may exercise any one or more of the following rights and remedies:

1.   **ACCELERATE INDEBTEDNESS.** Secured Party may declare the entire Indebtedness, including any prepayment penalty which Debtor would be required to pay, immediately due and payable, without notice.

2.   **ASSEMBLE COLLATERAL.** Secured Party may require Debtor to deliver to Secured Party all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party. Secured Party also shall have full power to enter upon the property of Debtor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Debtor agrees Secured Party may take such other goods, provided that Secured Party makes reasonable efforts to return them to Debtor after repossession.

3.   **SELL THE COLLATERAL.** Secured Party shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in its own name or that of Debtor. Secured Party may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice

5

of the time after which any private sale or any other intended disposition of the Collateral is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate unless payment of interest at that rate would be contrary to applicable law, in which event such expenses shall bear interest at the highest rate permitted by applicable law from date of expenditure until repaid.

4.  **APPOINT RECEIVER.** To the extent permitted by applicable law, Secured Party shall have the following rights and remedies regarding the appointment of a receiver: (a) Secured Party may have a receiver appointed as a matter of right, (b) the receiver may be an employee of Secured Party and may serve without bond, and (c) all fees of the receiver and his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate unless payment of interest at that rate would be contrary to applicable law, in which event such expenses shall bear interest at the highest rate permitted by applicable law from date of expenditure until repaid.

5.  **COLLECT REVENUES, APPLY ACCOUNTS.** Secured Party, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Secured Party may at any time in its discretion transfer any Collateral into its own name or that of its nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Secured Party may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Secured Party may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Secured Party may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Secured Party may, on behalf of and in the name of Debtor, receive, open and dispose of mail addressed to Debtor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Secured Party may notify account debtors and obligors on any Collateral to make payments directly to Secured Party.

6.  **OBTAIN DEFICIENCY.** If Secured Party chooses to sell any or all of the Collateral, Secured Party may obtain a judgement against Debtor for any deficiency remaining on the Indebtedness due to Secured Party after application of all amounts received from the exercise of the rights in this Agreement. Debtor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

7.  **OTHER RIGHTS AND REMEDIES.** Secured Party shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Secured Party shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

8.  **CUMULATIVE REMEDIES.** All of Secured Party's rights and remedies, whether evidenced by this Agreement or the Related Documents or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Secured Party to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Debtor under this Agreement, after Debtor's failure to perform, shall not affect Secured Party's right to declare a default and to exercise its remedies.

**This statement, upon presentation to the filing officer, is considered to be FILED FOR RECORD in accordance with Illinois Compiled Statutes, Commercial Code, UCC 810 ILCS § 9-401 and § 9-403 (1). See Study Comment (1).**

Date: _2/2/07_

_EVARISTUS MACKEY_
DEBTOR signature

_E_ _/_ _/_
Secured Party signature

_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_
DEBTOR Social Security Number

The *Secured Party* accepts the DEBTOR'S and Principle's signature in accord with 810 Illinois Compiled Statutes § 3-415 and 810 Illinois Compiled Statutes § 3-419 .

_Witness my hand and official seal_

_D. M. Nu_
_Notary Public_

_My Commission Expires 12-30-2015_

6

'7006 2160 0004 6934 8301

# DEFINITIONS and GLOSSARY OF TERMS

As used in this Security Agreement, the following words and terms shall have the meanings ascribed to them in this section, non obstante.
From Black's Law Dictionary and Illinois Compiled Statutes, Commercial Code, UCC 810 ILCS S/.

" Accommodation Party " *See* Black's Law Dictionary, 6th ed. *See also* 810 ILCS § 3-415 *and* 810 ILCS § 3-419.

" Account " *See* Black's Law Dictionary, 6th ed. *See also* 810 ILCS § 4-104 (1) (a) *and* 810 ILCS § 9-106.

" Agent " *See* Black's Law Dictionary, 6th ed.

" Agreement " *See* Black's Law Dictionary, 6th ed. *See also* 810 ILCS § 1-201 (3).

" Artificial Person " *See* Black's Law Dictionary, 7th ed. *See also* DUMMY CORPORATION and STRAWMAN. *Also* 810 ILCS § 1-201 (28).

" Bailee " *See* Black's Law Dictionary, 6th ed. *See also* 810 ILCS § 7-102 (a).

" Beneficiary " *See* Black's Law Dictionary, 6th ed. *See also* 810 ILCS § 5-102 (3). *Also see (Secured Party)*.

" Buyer " *See* Black's Law Dictionary, 6th ed. *See also* 810 ILCS § 2-103 (1) (a).

" Charge back " *See* Black's Law Dictionary, 6th ed. *See also* Surety *and* 810 ILCS § 4-212.

" Chattel Paper " *See* Black's Law Dictionary, 6th ed. *See also* 810 ILCS § 9-105 (1) (b).

" Claim " *means:* 1. Right to payment, whether or not such right is reduced to judgement, liquidated, unliquidated, fixed, or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or right to an equitable remedy for breach of performance if such breach rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgement, fixed, contingent, matured, unmatured, disputed, indisputed, secured or unsecured. 2. To demand as one's own, challenge of property or ownership of a thing which is wrongfully withheld. *See* Hill v. Henry, 66 N.J. Eq. 150, 57 Atl. 555. Also a claim is to state. *See* Douglas v. Beasley, 40 Ala. 147; Prigg v. Pennsylvania, 16 pet. 615, 10 L.Ed. 1060.

" Collateral " *See* Black's Law Dictionary, 6th ed. *And* 810 ILCS § 9-105 (1) (c).

" Contract " *See* Black's Law Dictionary, 6th ed. *And* 810 ILCS § 1-201 (11).

" Contract Right " *See* 810 ILCS § 9-106.

" Creditor " *mean* a person to whom a debt is owing by another person who is the "DEBTOR." One who has a right to require the fulfillment of an obligation or contract. One to whom money is due, and, in ordinary acceptation, has reference to financial or business transactions. The antonym of "DEBTOR." *See also* Black's Law Dictionary, 6th ed. *And* 810 ILCS § 1-201 (12) *(Secured Party)*.

" Currency " *See* Black's Law Dictionary, 7th ed.

" Derivatives " *means* coming from another, taken from something preceding; secondary. That which has not its origin in itself, but owes its existence to something foregoing . Anything obtained or deduced from another. *See also* Black's Law Dictionary, 6th ed.

" Debt " *See* Black's Law Dictionary, 6th ed. *See also* Burke v. Boulder Milling & Elevator Co., 77 Colo. 230, 235 P. 574, 575 and U.S. Sugar Equalization Board v. P. De Ronde & Co., C.C A.Del, 7 F.2d 981, 984.

" Debtor " *means* THE ORGANIZATION named herein and any and all derivatives thereof; *See* Black's Law Dictionary, 6th ed. *And* 810 ILCS § 9-105 (1) (d).

" Delivery " *See* Black's Law Dictionary, 6th ed. *And* 810 ILCS § 1-201 (14).

" Delegation of Performance " *See* 810 ILCS § 2-210.

" Documents of Title " *See* 810 ILCS § 1-201 (15) *and* 810 ILCS § 7-104 *and also* 810 ILCS § 9-105 (f). *See also* Black's Law Dictionary, 7th ed.

" Dummy Corporation " *means* THE ORGANIZATION named herein and any and all derivatives thereof; an artificial person or legal entity created by or under the authority of the laws of a state or nation, composed, in some rare instances of a single person (such as the DEBTOR). " The corporation is distinct from the individual or individuals who comprise it." Such entity subsists as a body politic under a special denomination, which is regarded in law as having a personality and distinct of its several members. *See* Dartmouth College v. Woodward, (4 Wheat), 518 636,657, 4 L.Ed. 629; U.S. v Trinidad Coal Co., 137 U.S. 160, 11 S.Ct. 57, 34 L.Ed. 640; Andrews Bros. Co. v. Youngstown Coke Co., 86 F.585, 30 C.C.A. 293; Porter v. Railroad Co., 76 Ill. 573; Nebraska Wheat Grower's Ass'n v. Smith, 115 Neb. 177, 212 N.W. 39,44; State v. Thistle Down Jockey Club, 114 Ohio St. 582, 151 N.E. 709, 711; Congdon v. Congdon, 160 Minn. 343, 200 N.W. 76, 87; Forest City Mfg. Co. v. International Ladies' Garment Workers' Union Local No. 104, 233 Mo.App 935, 111 S.W.2d 934; in re Crown Heights Hospital, 183 Misc. 563, 49 N.Y.S.2d. 658, 660; Froelich and Kuttner, of Manila, P.I., v. Sutherland, 57 App.D.C. 294, 22 F.2d 870, 872. And also "in rare instances where it lists a single person (such as the DEBTOR) this would be considered a corporation sole, which consists of only that one person only and his successors, in some particular station, who are incorporated by law in order to give them some legal capacities and advantages, particularly that of perpetuity, which in their natural persons they could not have." (or in the present situation, to give them some legal capacity or advantage of dealings in the government commercial activities which in their natural persons they could not have.) *See* Step.Comm., 168, 169; First Parish v. Dunning, 7 Mass. 447; Reid v. Barry, 93 Fla. 849, 112 So. 846, 859. The court cases also state that a corporation may exist as Domestic and or Foreign, with reference to the laws and the courts of any given state, a "domestic" corporation is one created by, or organized under, the laws of that state; a "foreign" corporation is one

1

created by or under the laws of another state, government, or country. (As in the present situation of a U.S. corporation in Puerto Rico, see (BMF) Business Master File.)  In re Grand Lodge, 110 Pa. 613, 1A 582;  Fowler v. Chillingworth, 94 Fla. 1, 113 So. 667, 669;  in re Ewles' Estate, 105 Utah 507, 143 P.2d 903, 905.  They also state that, "A Corporation de facto is one existing under the color of law and in pursuance of an effort made in "good faith" to organize a corporation under the statute; an association of men claiming to be a legally incorporated company, and exercising the powers and functions of a corporation, but without actual lawful authority to do so."  See Foster v. Hare, 26 Tex. Civ.App 177, 62 S.W. 541;  Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa, 234, 91 N.W. 1081;  Tulare Irrig. Dist. V. Shepard, 185 U.S. 1, 22 S.Ct. 531, 46 L.Ed. 773;  Evans v. Anderson, 132 Minn. 59, 155 N.W. 1040, 1041.  The fictitious named (DEBTOR), a strawman, or dummy corporation created by the government without knowledge or intent of the natural person (Secured Party), only exists under the color of law and claiming only to be legally incorporated for the purpose of commerce, and exercising the powers and functions of a corporation, but without actual lawful authority to do so, but strictly for the benefit of the government and its commerce.  The government shows the capital letter spelling of the DEBTOR name when they created the " fictitious named" corporation, due to the need of a specific name required for each separate legal entity's identification.  Therefore, when a corporation is constructed, a name is always given to it, or supposing to be actually given, will attach to it by implication, and by that name alone it must sue and be sued, and do all legal acts, though a very minute variation therein is not material, and the name is capable of being changed (by competent authority) without affecting the identity or capacity of the corporation. See Wharton on Corporations. See also Black's Law Dictionary, 6th ed.

" **Duty of Care; Contractual Limitation** "  See 810 ILCS § 7-204.

" **Entrusting** "  See 810 ILCS § 2-403 (2), (3).

" **General Intangibles** "  See Black's Law Dictionary, 6th ed. And 810 ILCS § 9-106.

" **Goods** "  See Black's Law Dictionary, 6th ed. And 810 ILCS § 2-105 (1), 810 ILCS § 9-105 (1) (h), and 810 ILCS § 9-109.

" **Incapacity** "  See Black's Law Dictionary, 6th and 7th ed. See also 810 ILCS § 3-305 (a) (1).

" **Indemnities** "  See 810 ILCS § 5-113.

" **Indemnity** "  means a collateral contract or assurance by which one person engages to secure another against an anticipated loss or to prevent him from being damniifed by the legal consequences of an act or forebearance on the part of one of the parties or of some third person. See Nat'l Bank of Tifton v. Smith, 142 Ga. 663, 83 S.E. 526, 528 L.R.A. 1915B, 116. See also Black's Law Dictionary, 7th ed.

" **Instrument** "  See Black's Law Dictionary, 6th ed. See also 810 ILCS § 3-104 and 810 ILCS § 9-105 (1) (h).

" **Item** "  means part or parts of a whole. See also 810 ILCS § 4-104 (a) (9).

" **Juristic Person** "  Site UNITED STATES V. SCOPHONY CORP. 69 F.SUPP 666, " From earliest times the law has enforced rights and exacted liabilities by utilizing a corporate concept – by recognizing , that is, **Juristic Persons** other than Human Beings.  The theories by which this mode of legal operation has developed, has been justified, qualified, and defined are the subject-matter of a very sizable library.  The historic roots of a particular society, economic pressures, philosophic notions, all have had their share in the law's response to the ways of men carrying on their affairs through what is now the familiar device of the Corporation ------ Attribution of legal rights and duties to a **JURISTIC PERSON** other than man is necessarily a metaphorical process.  And none the worse for it.  No doubt, "Metaphors in law are to be narrowly watched," Cardozo J., in Berkey v. Third Avenue R. Co., 244 N.Y. 84, 94. But all instruments of thought should be narrowly watched lest they be abused and fail in their service to reason." Also see DEBTOR, DUMMY CORPORATION, and ARTIFICIAL PERSON.

" **Liability** "  means every kind of legal obligation, responsibility, or duty.  Also the state of being bound or obliged in law or justice to do, pay, or make good something.  See Mayfield v. First Nat'l Bank of Chattanooga, Tenn. C.C.A. Tenn., 137 F.2d 1013, 1019;  Feil v. City of Coer d' Alene, 23 Idaho 32, 129 P. 643, 649, 43 L.R.A. N.S. 1095; Breslaw v. Rightmire, 196 N.Y.S. 539, 541, 119 Misc. 833. See also Black's Law Dictionary, 6th ed.

" **Money** "  means the medium of exchange authorized or adopted by a government as part of its currency. See also 810 ILCS § 1-201 (24).

" **Natural Person** "  means a human being, as distinguished from an artificial person created by law, refers to the Secured Party named herein. See Black's Law Dictionary, 7th ed.

" **Negotiable** "  means capable of being transferred by indorsement or delivery so as to pass to holder the right to sue in his own name and take free of equities against assignor payee.  Fischbach & Moore v. Philadelphia Nat. Bank, 134 Pa. Super. 84, 3 A.2d 1011, 1012. See also Black's Law Dictionary, 4th ed. And also 810 ILCS § 7-501 and 810 ILCS § 7-502.

" **Non Negotiable** "  means not negotiable, not capable of passing title or property by indorsement or delivery.  Any document of title that is not a negotiable instrument.  An instrument which may not be transferred by indorsement or delivery or by delivery alone, though it may be assigned.  The transferee does not become a holder unless it is negotiated.  Compare Negotiable. See Black's Law Dictionary, 7th ed. See also 810 ILCS § 7-501 and 810 ILCS § 7-502.

" **Non obstante** "  means a phrase used in documents to preclude any interpretation contrary to the stated object or purpose. See Black's Law Dictionary, 6th ed.

" **Notice** "  means warning or intimation of something. See 810 ILCS § 1-201 (25), (26), and (27).

" **On Demand** "  See Black's Law Dictionary, 6th ed. Also see 810 ILCS § 3-108.

2

7006 2760 0004 6934 8301

" **Organization** " *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 1-201 (28) refers to DEBTOR, JURISTIC PERSON, and STRAWMAN.

" **Party** " *means* a person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually. *See* 810 ILCS § 1-201 (29).

" **Person** " *See* Black's Law Dictionary, 7th ed. *Also see* 810 ILCS § 1-201 (30).

" **Proceeds** " *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 9-306 (1).

" **Property** " in the strict legal sense, means an aggregate of rights which are guaranteed and protected by the government, and in the ordinary sense, indicates the thing itself, rather than the rights attached to it. *See* 62 Misc. Rep. 189, 116 N.Y. Supp 1000.

" **Real Man** " *means* a real live flesh and blood man; refers to the Secured Party named herein and any and all derivatives thereof. " There, every man is independent of all laws, except those prescribed by nature. He is not bound by any institution formed by his fellowmen without his consent." CRUDEN v. NEALE, 2 N.C. 338 (1796) 2 S.E. 70.

" **Registered Form** " *See* 810 ILCS § 8-102 (13).

" **Remedy for Breach of Collateral** " *See* 810 ILCS § 2-701.

" **Remedy of Indemnity** " *See* 810 ILCS § 5-111 *and* 810 ILCS § 5-117.

" **Representative** " *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 1-201 (35).

" **Right to Reimbursement** " *See* 810 ILCS § 5-114.

" **Rights Acquired to Indemnity** " *See* 810 ILCS § 7-504 (4).

" **Secondary Party** " *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 3-103 (1) (d).

" **Secured Party** " *refers* to the real man and natural person named herein, including any and all derivatives thereof, (also considered Creditor). *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 9-105 (1) (m).

" **Securities** " *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 8-102 (15), 810 ILCS § 8-103. *And* 810 ILCS § 8-105.

" **Security Interest** " *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 1-201 (37).

" **Seller** " *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 2-103 (1) (d).

" **Signature** " *See* 810 ILCS § 3-401 (considered signed).

" **Signed** " *See* 810 ILCS § 1-201 (39) (considered signature).

" **Straw Man** " *means* THE ORGANIZATION named herein and any and all derivatives thereof. *See* Black's Law Dictionary, 6th ed. *Refers* to DEBTOR, DUMMY CORPORATION, ARTIFICIAL PERSON and JURISTIC PERSON. *Also see* 810 ILCS § 1-201 (28).

" **Surety** " *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 1-201 (40) (considered charge back).

" **Transferable** " is a term used in a quasi legal sense, to indicate that the character of assignability or negotiability attaches to the particular instrument, or that it may pass from hand to hand, carrying all rights of the original holder. The words " not transferable " are sometimes printed upon a ticket, receipt, or bill of lading, to show that the same will not be good in the hands of any person other than the one to whom first issued. *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 3-201.

" **Value** " *See* Black's Law Dictionary, 6th ed. *Also see* 810 ILCS § 1-201 (44) *and* 810 ILCS § 3-303.



**UNITED STATES POSTAL SERVICE**

**Track & Confirm**

# Track & Confirm

## Search Results

Label/Receipt Number: **7006 2760 0004 6934 8417**
Status: **Delivered**

Your item was delivered at 3:08 PM on May 29, 2007 in NEW
ORLEANS, LA 70130.

( Additional Details > )  ( Return to USPS.com Home > )

Track & Confirm

Enter Label/Receipt Number.

Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.  ( Go > )



**POSTAL INSPECTORS**
Preserving the Trust

**site map    contact us    government services    jobs    National & Premier Accounts**
Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy


**UNITED STATES**
**POSTAL SERVICE**®

Home | Help

Track & Confirm

# Track & Confirm

## Search Results

Label/Receipt Number: **7004 2510 0003 0400 3395**
Status: **Delivered**

Your item was delivered at 10:13 AM on December 5, 2006 in NEW
ORLEANS, LA 70130.

( Additional Details > )  ( Return to USPS.com Home > )

**Track & Confirm**

Enter Label/Receipt Number.



### Track & Confirm by email

Get current event information or updates for your item sent to you or others by email.  ( Go > )

POSTAL INSPECTORS    site map    contact us    government services    jobs    **National & Premier Accounts**
Preserving the Trust    Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy



**UNITED STATES**
**POSTAL SERVICE**

Home | Help

Track & Confirm

# Track & Confirm

### Search Results

Label/Receipt Number: **7005 1820 0007 0969 8659**
Status:

Your item was delivered at 11:34 am on February 22, 2007 in NEW ORLEANS, LA 70130. A proof of delivery record may be available through your local Post Office for a fee.

Additional information for this item is stored in files offline.

( Restore Offline Details > )  ( ? )    ( Return to USPS.com Home > )

---

Track & Confirm

Enter Label/Receipt Number.

---



**POSTAL INSPECTORS**     site map   contact us   government services   jobs   **National & Premier Accounts**
Preserving the Trust          Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy

Evaristus Mackey                    7006 2760 0004 6934 8301
P.O. Box 2000
Bruceton Mills, W. Va. 26525

Clerk of Court; Loretta G. Whyte

Date:

Re: Filing of Documents in Case No. 00-316

Dear Madam,

   The Docket Master forwarded me has
several documents forwarded for filing
not being docketed / filed in this honorable
court. 1.) The Track & Confirm for certified
mail no. 7004 2510 0003 0400 3395 included a
Demurrer Motion, Notice of Protest, Asseveration
& Declaration, Denunciation & Renunciation of
U.S. Citizenship, Affidavit Denying Corporation
Existence, Commerical/Trade Name Notice,
Request For 1099 OID Bonds / Taxpayer
Identification, UCC-1, Security Agreement
& documents Accepted For Value. The documents
were delivered December 5, 2006 putting you
in violation of abusing authority & breaking the
law being liable under Tort & Commerical Lien
where NOTICE & OPPORTUNITY TO CURE
(by filing the document in court) is hereby
given. 2.) The Track & Confirm for certified
mail no. 7005 1820 0007 0969 8659 included
a Conditional Acceptance For Value was
never filed by you in case no. 00-316
again, abusing authority & breaking the law
making you liable under Tort & Commerical Lien

7006 2760 0004 6934 8301

where NOTICE & OPPORTUNITY TO CURE (by filing documents in court) is hereby given.

3.) The Track & Confirm for certified mail no. 7006 2760 0004 6934 8417 was delivered May 29 2007, putting you in violation of & abuse of authority & breaking the law being liable under Tort & Commercial Lien where NOTICE & OPPORTUNITY TO CURE (by filing the document in court) is hereby given. The mail included a Tort Claim plus affidavits & other documents of which a complete copy was also forwarded Washington DC. Please file the enclosed Statement of Assignment of Account in case no. 00-316 along with this letter & Track & Confirm exhibits. Thanking you in advance for your time. Also forward another Docket Master showing all documents being filed on the Tort & Commercial Lien process will be executed within the next 30 days from June 12th, 2007. A partial assignment & release filing on a UCC-3 in the Commercial Registry will commence after the Tort & Commercial Lien. A UCC-4 Private Special Security Agreement "True Bill" will also be filed in the Commercial Registry & forwarded to the IRS, Comptroller of Currency, U.S. Treasury. Please file the documents in case no. 00-316.

P.S. The "Notice Of Claim Due" is not on the Docket Sheet Forwarded. Please file the Notice Of Claim Due.

Sincerely,

Without Prejudice



CERTIFIED MAIL

7006 2760 0004 6934 8301